UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA            :
                                    :
v.                                  :    Criminal Information No. 09-156 (GK)
                                    :
JOSE MARIA CORREDOR-IBAGUE,         :    **FILED**
   a/k/a "Boyaco,"                  :
   a/k/a "Chepe,"                   :    JUN 2 6 2009
                                    :
                                    :    <u>UNDER SEAL</u>    Clerk, U.S. District and
Defendant.                          :                       Bankruptcy Courts

### STATEMENT OF FACTS

The United States of America, by and through the Narcotic and Dangerous Drug Section of the Criminal Division of the United States Department of Justice (NDDS) and the United States Attorney's Office for the District of Columbia (USAO/D.C.),[1] and Jose Maria Corredor-Ibague, a/k/a "Boyaco" and "Chepe," the defendant, hereby submit this Statement of Facts in support of the defendant's guilty plea. Had this case gone to trial, the United States would have established the following beyond a reasonable doubt:

1. In reference to Counts One and Two[2] of the Criminal Information, from on or about 2001 through October 15, 2006, the defendant was the leader of a drug transportation network which processed and manufactured cocaine in Colombia-based laboratories and used airplanes to fly from airstrips in Colombia to various countries multi-hundred kilogram loads of cocaine, some of which was ultimately imported into the United States.

---

[1] NDDS and USAO/D.C. will be hereinafter referred to as the "United States."

[2] Count Two of the Criminal Information charges a violation of Title 21, United States Code, Section 960a, which was enacted into law on March 6, 2006.

2. In addition, while the defendant conducted his cocaine production and trafficking activities, he provided items and services, such as weapons, arms, and uniforms to members of the Revolutionary Armed Forces of Colombia (an English translation of the Spanish name of the group, *Fuerzas Armadas Revolucionarias de Colombia,* commonly known as and referred to hereinafter as the *FARC*) – an armed and violent organization in Colombia that engages in terrorist activity and terrorism. The defendant conducted his activities with the knowledge that the FARC engaged in terrorist activity and terrorism in Colombia and elsewhere during this same time period.

3. Between at least 2001 and his arrest on October 15, 2006, the defendant, along with associates who, at times, acted at his direction, including Miguel Angel Osorio-Castano, Luis Alfredo Nanez-Duarte, Carlos Ivan Mendes-Mesquita, and Edilma Morales-Loaiza, a/k/a "Maria Ofelia," a/k/a "La Negra," a/k/a "Marucha," a/k/a "Carolina," a/k/a "Carolina Yanave Rojas," transported large quantities of cocaine from parts of Colombia to various countries, including Brazil, Guyana, Mexico, Paraguay, Suriname, and Venezuela, knowing that some of that cocaine would reach the United States. From these countries, which were often used as transshipment points, the cocaine was sent on to its final destination, either to the United States or Europe, by air, water or land. During this time period, the defendant and his associates also operated cocaine laboratories in the jungles of Colombia where they manufactured cocaine by converting cocaine base to crystalized powder kilograms of cocaine, which they packaged and sent to foreign countries. The defendant and his associates also transported to foreign countries cocaine owned by other traffickers, including cocaine owned by and purchased from the FARC. During the course of the conspiracy, the defendant conspired to manufacture and distribute more than 150

kilograms of cocaine, which he knew would be imported into the United States and other countries.

4. All of these activities were conducted with the support and protection of the FARC, designated as a Foreign Terrorist Organization (FTO) by the United States Secretary of State, pursuant to Title 8, United States Code, Section 1189, initially in October 1997 and most recently on October 11, 2005. The FARC, in particular its "First Front," profited from the activities of the defendants and his associates by taxing their purchase of cocaine base, the crystalization and manufacture of cocaine, and the use of airstrips to fly the processed cocaine out of Colombia to drug purchasers in other countries. The defendant and his associates paid taxes to the FARC using United States currency, weapons, or both.

5. The defendant and his associates based their operations mostly in the Departments of Guaviare and Vaupes, where they bought coca base from the FARC, processed and crystalized it at their nearby laboratory, and flew it in airplanes from an airstrip in Caruru and other airstrips in Colombia to airstrips in Suriname, Venezuela, and other countries. The defendant and his associates paid taxes to the FARC for the use of the Caruru airstrip, which they paid in both U.S. currency and weapons which they had received as proceeds from their cocaine sales.

6. For example, in November 2003, more than 300 kilograms of cocaine produced and transported by the defendant and his associates were seized by authorities from the defendant's airplane that flew from the Caruru, Colombia airstrip and landed in Suriname. In February 2004, more than 290 kilograms of cocaine, arms and currency (approximately $320,000 in U.S. currency and 40,000 in Euros) belonging to the defendant and his associates were seized by authorities from an aircraft that had landed in Suriname.

7. In approximately March 2004, the defendant and his associates closed their Colombian cocaine laboratory and moved into Venezuela continuing their cocaine distribution operations even while the defendant was incarcerated in Venezuela between October 2004 and June 2005. From mid-2005 until October 15, 2006, the defendant and his associates produced cocaine at their laboratory on the Inirida river in Colombia and continued to transport cocaine by river to other countries or to airstrips in Colombia where it was then flown into Suriname, Venezuela and other countries on a regular and frequent basis. In Suriname, the cocaine was sold to traffickers who paid in cash and weapons, which were ultimately sent back to the defendant in Colombia and used, in part to pay taxes to the FARC for the defendant's cocaine operations.

8. In addition, during this time period, and especially between March 6 and October 15, 2006, the defendant conducted his cocaine production and trafficking activities, including the distribution of more than five kilograms of cocaine, with the knowledge and intent to provide items and services, such as weapons and uniforms, all having some pecuniary and monetary value, to members of the FARC and did so with the knowledge that the FARC engaged in terrorist activity and terrorism.

9. Evidence of the defendant's participation in the offenses related to Counts One and Two was established through: the use of confidential informants, including testimony regarding tax payments to the FARC; numerous court-authorized telephone interceptions of the defendant speaking with other members of his drug organization, including co-defendants Miguel Angel Osorio-Castano and Luis Alfredo Nanez-Duarte, in which they discussed and coordinated the transportation of cocaine shipments; physical evidence seized during the investigation, including separate seizures, each in excess of 150 kilograms of cocaine in Suriname and Brazil; and the

defendant's own post-arrest statements to Special Agents of the United States Drug Enforcement Administration and Federal Bureau of Investigation in which the defendant admitted his leadership role in the organization.

10. In reference to Count Three of the Criminal Information, from on or about 2002, through October 15, 2006, in Colombia and elsewhere, the defendant and his co-conspirators and associates provided material support, assistance and resources to an FTO, namely, the FARC, by procuring and supplying them with weapons, ammunition, and communications equipment such as satellite phones and SIM cards. In order to accomplish this conspiracy, the defendant and his co-conspirators and associates, including Edilma Morales-Loaiza, found buyers for and transported by air for profit, via clandestine airstrips located in Colombia and Venezuela, cocaine produced in Colombia. As partial payment for the cocaine, controlled by the FARC, the defendant and his co-conspirators and associates received and then delivered to FARC members weapons and ammunition.

11. For example, on several occasions between 2002 and 2005, the defendant and his associates delivered numerous weapons, including assault-type weapons, machine guns and handguns to members and leaders of the FARC at locations in Colombia including clandestine airstrips in Caruru, Department of Vaupes, and Pacoa, Department of Amazonas.

12. The defendant and his co-conspirators and associates further used profits from the sale of the cocaine to procure communications equipment for FARC members. For example, on several occasions between 2003 and 2005, the defendant and his associates sought and arranged to purchase, and procured, multiple satellite phones and SIM cards, and provided them to the

FARC, including to at least one high-ranking member, in order to further the activities of the FARC.

13. In addition, in or about May 2003, the defendant introduced a co-conspirator to a high-ranking FARC member for the purpose of allowing that FARC member to purchase SIM cards directly from the co-conspirator. On or about February 13, 2006, the defendant directed an individual to purchase communications equipment in Bogota, Colombia, including two satellite telephones and two computers, and directed that they be delivered to a FARC collaborator, who later provided it to the defendant.

14. Evidence of the defendant's participation in the offenses related to Count Three was established through: telephone conversations intercepted pursuant to United States court authorization, telephone conversations intercepted by Colombian authorities pursuant to judicial authorization, consensually recorded telephone conversations, documents identifying shipments of supplies to the FARC, and the testimony of witnesses cooperating with the United States government. The defendant's post-arrest statements, after waiving his Miranda rights, were consistent with the other evidence that establishes the defendant's role and participation in these offenses.

15. This factual proffer is a summary of the defendant's actions, and is not intended to be a complete accounting of all facts and events related to the offense or other offenses, nor does it contain each and every fact known to the defendant and to the United States concerning the defendant's and others' involvement in the charges set forth in the plea agreement. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the

defendant's guilty plea to the offenses charged in Counts One, Two, and Three of the Criminal Information.

Respectfully submitted,

_____
Glenn C. Alexander
Robert J. Raymond
James A. Faulkner
Lawrence Schneider
Trial Attorneys
Narcotic and Dangerous Drug Section
U.S. Department of Justice
Criminal Division

_____
M. Jeffrey Beatrice
Anthony Asuncion
Lynn E. Haaland
Assistant United States Attorneys
David P. Cora, Trial Attorney
Counterterrorism Section
National Security Division

DATE: _June 26_, 2009

## DEFENDANT'S ACKNOWLEDGEMENT

  I have read a Spanish translation of this factual proffer and have discussed it with my attorney, Ron Earnest, Esquire. I fully understand this factual proffer. I agree and acknowledge by my signature that this proffer of facts is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

Date: _June 26, 2009_   X _Jose M. Corredor_
              Jose Maria Corredor-Ibague
              Defendant

## ATTORNEY'S ACKNOWLEDGEMENT

I have read this factual proffer, and have reviewed it fully with my client. I concur in my client's desire to adopt this factual proffer as true and accurate.

Date: _June 22, 2009_            _____
                                 Ron Earnest, Esquire
                                 Attorney for Jose Maria Corredor-Ibague